UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

SHAWNA TICKLES

CRIMINAL ACTION

NO. 09-106-JJB-2

## RULING ON MOTION FOR A NEW TRIAL

This matter arises out of a motion for a new trial filed by Defendant, Shawna Tickles. (Doc. 95.) The government filed an opposition (doc. 97) and Tickles filed a reply (doc. 98). The Court held an evidentiary hearing and oral argument on February 23, 2010. For the following reasons, Tickles' motion is DENIED.

### Background

On December 17, 2009, a jury convicted Tickles of one count of possession with intent to distribute cocaine base and one count of possession of marijuana. The government's case against Tickles for possession with intent to distribute cocaine largely relied upon guilt through aiding and abetting.[1] After trial, Tickles filed a motion for a new trial concerning only the verdict for possession with intent to distribute cocaine base.

---

[1] The Court provided the jury with the Fifth Circuit's pattern instruction on aiding and abetting, which requires finding (1) that the underlying offense—possession with intent to distribute a controlled substance—was committed by some person, (2) that the defendant associated with the criminal venture; (3) that the defendant purposefully participated in the criminal venture; and, (4) that the defendant sought by action to make that venture successful. *2001 Fifth Circuit Pattern Criminal Jury Instructions*, 2.06.

1

The charges arose out of a drug transaction between the co-defendant, Davie Mattire, and a confidential informant, Randy Andrews. Tickles drove Mattire to the transaction. On the way, they stopped so that Mattire could hide the drugs on the side of the road. After Andrews and Mattire confirmed the deal, Tickles then drove Mattire to retrieve the drugs and back to the transaction site. Tickles confessed that she knew Mattire was making a drug deal.

In preparation for trial, Agent Chad Scott of the Drug Enforcement Agency ("DEA") conducted two interviews of Andrews in June 2009 ("First Interview") and in November 2009 ("Second Interview"). Prior to trial, the government provided a DEA-6 from the First Interview, pursuant to this Court's order to provide all *Giglio* information one week before trial. Only after the trial, however, did the government provide a DEA-6 from the Second Interview.[2]

Tickles argues that a new trial is mandated under Rule 33 of the Federal Rules of Criminal Procedure in the "interest of justice." Fed. R. Crim. P. 33.[3] Specifically, she argues that by withholding the DEA-6, the government failed to disclose evidence of an agreement between Andrews and the government regarding future prosecution. She argues that Andrews provided the only evidence of her past involvement with Mattire's criminal venture and that such

---

[2] It appears that the government accidentally, rather than intentionally, withheld the evidence.
[3] Defendant also argued that non-production of the DEA-6 violated the government's duty under the Jencks Act. See 18 U.S.C. §3500. At the evidentiary hearing, however, the Defendant conceded that this DEA-6 is not Jencks Act material; therefore that issue is no longer before the Court.

evidence formed the sole basis for a finding of aiding and abetting, thus any impeachment evidence of Andrews could have changed the outcome of trial.

## Analysis and Conclusion

At oral argument, the government conceded that the Second Interview is *Giglio* material.[4] Thus, the government had a duty to disclose the material and the Court need only decide whether the government's withholding of this material constitutes grounds for a new trial.

The standard for a new trial under Rule 33 is the "materiality standard," which holds that evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Tickles argues that the Second Interview is material because of its substantial impeachment value. Indeed, there is little doubt that Tickles' attorney, Mark Upton, could have effectively wielded the Second Interview to assault the government's case. He could have asked why Andrews did not mention Tickles in the First Interview, which occurred before her arrest, but recalled substantial involvement on her part in the Second Interview, which occurred after her arrest in preparation for trial.[5] Also, he could have questioned

---

[4] Under *Giglio v. United States*, the government must disclose any evidence that affects the credibility of its witnesses. 405 U.S. 150, 154 (1972).

[5] The Court notes that Upton did impeach Andrews with the First Interview at trial; however, he argued at oral argument that had he the Second Interview before him, he could have much more effectively impeached Andrews.

3

Agent Scott as to why he first documented Andrews' knowledge about Tickles "*after* agent Scott's strikingly similar testimony in the 404B motion on November 3, 2009."[6] With this Second Interview, Upton argued that he would have characterized the meeting not as an interview, but as a coaching session. Therefore, the Court finds that the Second Interview did have some impeachment value.

Even with the added impeachment value, however, the Court is not convinced that there is a reasonable probability that had the Second Interview been provided, the result of the proceeding would have been different. Contrary to Tickles' arguments, Andrews' testimony of Tickles' prior involvements with Mattire was not the only evidence allowing the jury to find Tickles guilty of aiding and abetting. Testimony regarding the day of her arrest could have established that fact as well. As Agent Scott testified, based on surveillance, Tickles drove Mattire and was with him as they stopped to hide containers concealing drugs, met with Andrews, retrieved the containers, and returned with the containers.[7] In addition, Agent Scott testified that Tickles confessed that she drove Mattire to the location, stopping to drop off and then retrieve the canisters, with knowledge of the impending drug transaction.[8] Thus, even without testimony regarding Tickles' prior involvements, the government introduced sufficient evidence of aiding and abetting. *See United States v. Jaramillo*, 42 F.3d 920, 923-24 (5th Cir. 1995)

---

[6] Def. Reply Memo. 5 (doc. 98) (emphasis in original).
[7] Tr. Trial Excerpt 13-15 (doc. 102).
[8] *Id.* at 24-25.

4

(finding the defendant aided and abetted by driving with the co-defendant to make the transaction and carrying a large empty purse that could be used to carry the money); United States v. Hernandez-Beltran, 867 F.2d 224, 227 (5th Cir. 1989) (finding the defendant aided and abetted by driving the co-defendant to the border, letting him cross on foot with cocaine, and meeting him on the other side to then drive him to a transaction); see also United States v. Blaylock, 421 F.3d 758, 773 (8th Cir. 2005) (noting that the defendant "assisted [co-defendant] in driving the vehicle").

Thus, the Court finds that although the government should have provided the Second Interview, and admonishes the government's error, the Second Interview was not material. Therefore, a new trial is not mandated under Rule 33. Accordingly, Tickles' motion for a new trial (doc. 95) is hereby DENIED.

Signed in Baton Rouge, Louisiana, on April 23rd, 2010

---
JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA